UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ANGELA HOSKINS,<br>as Administratrix of the<br>ESTATE OF KENNIE HOSKINS, | )<br>)<br>) | Civil Action No. 6:23-CV-167-CHB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| ROBERT DUTCHER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Candace J. Smith. [R. 57]. The Report and Recommendation addresses Plaintiff's Motion for Leave to File a Second Amended Complaint ("Motion to Amend"). [R. 43]. The defendants responded to that motion, [R. 46], and Plaintiff replied. [R. 49]. Magistrate Judge Smith now recommends that the Court deny the Motion to Amend. [R. 57]. Plaintiff filed objections, [R. 60], and Defendants responded. [R. 64]. This matter is now ripe for review. For the reasons set forth below, the Court will sustain Plaintiff's objections and grant the Motion to Amend.

## I. BACKGROUND

In his original Complaint, Mr. Hoskins alleged that he was sentenced to 180 days in jail for failure to pay child support, and, on August 31, 2022, he was arrested and began serving his sentence at the Bell County Detention Center. [R. 1, ¶¶ 10–16]. He alleges that, on September 1, 2022, shortly after being placed into his cell, he was "brutally assaulted by five inmates." *Id.* ¶¶ 19–22. Mr. Hoskins alleges that "[t]he assault lasted for an extended period of time without

- 1 -

interruption by any deputy jailers," before a deputy jailer eventually entered the cell and stopped the fight. *Id.* ¶¶ 25–27. Thereafter, Mr. Hoskins alleges, he complained of severe pain in his left side, difficulty breathing, and broken ribs, but deputy jailers failed to examine him, report his injuries to medical personnel, or request medical attention. *Id.* ¶¶ 28–40. Mr. Hoskins further alleges that these deputy jailers told him multiple times that he was not going to the hospital and he would not be seen by a nurse. *Id.* ¶¶ 29, 36.

Later that evening, Mr. Hoskins alleges he suffered a seizure in his cell. *Id.* ¶¶ 41–43. Another inmate alerted a deputy jailer, and Mr. Hoskins was removed from the cell and placed in a restraint chair, where he suffered another seizure. *Id.* ¶¶ 44–46. Mr. Hoskins was transported to the hospital, where he was ultimately diagnosed with "displaced fractures in left ribs 7 through 10, blood pooling between his chest wall and lungs, a punctured left lung, and a complex splenic laceration with perisplenic hematoma." *Id.* ¶¶ 48–57. On September 4, 2022, Mr. Hoskins was transferred to another hospital for emergency surgery, after being released from the custody of Bell County Detention Center on an unsecured bond. *Id.* ¶¶ 58–62. Mr. Hoskins was released from the hospital on September 8, 2022, with his discharge paperwork indicating "a grade 4 splenic laceration, a right hepatic hematoma, a left pneumothorax, acute kidney injury, and displaced fractures at left ribs 5 through 10." *Id.* ¶¶ 63–64.

Meanwhile, on September 7, 2022, Mr. Hoskins, through counsel, sent an Open Records Act request for, among other things, "any internal investigation into Plaintiff's assault, video of the assault, the names of other inmates assigned to the cell with Plaintiff, the names of the deputy jailer and medical personnel working between August 31 and September 2," and related information. *Id.* ¶ 66; *see also* [R. 1-1]. Mr. Hoskins did not receive a response. [R. 1, ¶ 67]. He then sent a second Open Records Act request on September 23, 2022, seeking the same

information. *Id.* ¶ 67; *see also* [R. 1-2]. On September 29, 2022, Bell County responded, "claiming that the internal investigation, video of the assault, and the names of the inmates housed with [Mr. Hoskins] were a part of an ongoing investigation, and therefore" exempt under Kentucky's Open Records Act. [R. 1, ¶ 68]; *see also* [R. 1-3]. Specifically, Bell County explained that the assault "was reported to the Bell County Sheriff's Department," which "began an investigation that has led to an arrest of another inmate, Matthew Gibson." [R. 1-3]. Bell County further explained, "The Sheriff's Department has advised us that its investigation remains open," and "[it] is likely that the premature release of these records and videos may impede the investigation and enforcement by the Sheriff's Department," making those records exempt under the Kentucky Open Records Act. *Id.*

On October 6, 2022, Mr. Hoskins requested additional records, but the county again explained that certain records were part of the "ongoing investigations by the Bell County Sheriff's Department as well as the Department of Corrections," and could not be released until the investigation concluded. [R. 1-4, p. 1]; [R. 1, ¶ 69]. On August 23, 2023, Mr. Hoskins inquired as to whether the detention center would supplement its responses, "as the investigation had to now be concluded." [R. 1, ¶ 70]. The county did not supplement its responses. *Id.* ¶ 71.

On September 1, 2023, Kennie Hoskins filed this action, asserting claims under 42 U.S.C. § 1983 for violations of his constitutional right to be free from deliberate indifference to his serious medical needs (Count I); supervisory liability, failure to train, and final policymaker liability (Count II); municipal/organizational liability (Count III); negligence (Count IV); and willful violation of access to public records under Kentucky's Open Records Act (Count V). [R. 1, ¶¶ 72–110].

On December 7, 2023, the Court entered a scheduling order, which explained that the

- 3 -

parties had until January 31, 2024 to amend pleadings or join parties. [R. 14, ¶ 3]. The parties thereafter engaged in discovery. Relevant here, on November 15, 2023, Defendants finally supplemented their response to Mr. Hoskins's Open Records Act request. [R. 46-8]; [R. 46-9]. They provided, among other things, a headcount roster for the detention center for August 31, 2022 through September 2, 2022, as well as the arrest citation for an individual arrested for the attack on Mr. Hoskins. [R. 46-8, p. 3]; [R. 46-9].

The defendants' November 15, 2023 response also explained that, "[i]ncluded with the record we received are signed statements by inmates in which they identified Mr. Hoskins's alleged assailants," but "[t]he disclosure of this information . . . would adversely affect both jail security and the ongoing and possible future proceedings brought by law." [R. 46-8, p. 3]. As a result, the defendants asserted that these records were exempt from disclosure. *Id.* However, they indicated a willingness to provide the records "upon the entry of a protective order," a draft of which was provided to Plaintiff. *Id.* Plaintiff represents that her attorney immediately responded to Bell County's counsel with suggested edits to the proposed protective order, but received no response. [R. 49, pp. 3–4]. Plaintiff followed up multiple times over the next few months about the proposed changes to the protective order but did not receive any response from Bell County's counsel. *Id.*; *see also* [R. 49-5]. As a result, no protective order was entered. Eventually, on October 11, 2024, discovery responses revealed the names of Mr. Hoskins's assailants. [R. 43, p. 5]; [R. 43-3 (Inmate Statements)].

On November 7, 2024, Mr. Hoskins passed away. [R. 40-1]. The defendants therefore requested an extension of the fact discovery deadline, which was set to expire on November 30, 2024. *See* [R. 40]. The Court granted that request, suspended the pending deadlines, and allowed Mr. Hoskins's successor or representative to file a motion to substitute. [R. 41]. The Court further

ordered the parties to, upon substitution, file a joint status report setting forth proposed deadlines for completing discovery and filing dispositive motions. *Id.* at 2.

On February 17, 2025, Angela Hoskins, the administratrix of Mr. Hoskins's estate, moved the Court to substitute her as the plaintiff in this action and submitted a proposed amended complaint that reflected this substitution. [R. 42]. The Court granted that motion on September 11, 2025. [R. 50]; *see also* [R. 51 (First Amended Complaint)]. Pursuant to the Court's prior order, the parties then filed their joint status report with proposed discovery and dispositive motion deadlines. [R. 53]. After a telephonic status conference, the Court, among other things, extended the deadline for filing amended pleadings (by consent or motion) and to join additional parties to January 30, 2026. [R. 55].

Meanwhile, on March 25, 2025, Plaintiff filed the pending Motion to Amend.[1] [R. 43]. Plaintiff seeks to file a Second Amended Complaint that adds against existing defendants a new § 1983 claim for failure to protect and a new negligence claim, and she supplemented her municipal liability and failure-to-train claims (hereafter, collectively referred to as the "failure to protect claims"). *See* [R. 43-9 (Proposed Second Amended Complaint)]. These new failure to protect claims are based on allegations that the detention center failed to classify and house inmates based on their current charges, known criminal history, history of violence or disruptive behavior, and special needs, as required by Kentucky law and the detention center's own policies. *See, e.g.,* *id.* ¶¶ 20–27. This resulted in violent and non-violent inmates being housed together in the same cells. *Id.* It likewise resulted in Mr. Hoskins being housed in the same cell as certain violent

---

[1] Because the parties agreed to extend the deadline for amending the pleadings to January 30, 2026, [R. 55], and the Motion to Amend was filed on March 25, 2025, [R. 43], the Court need not consider Rule 16. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The Court discusses this issue in more detail below.

- 5 -

inmates, including two of the individuals who assaulted him. *Id.* ¶¶ 28–35.

In her Motion to Amend, Plaintiff acknowledged the potential timeliness issue. She argued, however, that the statute of limitations should be tolled under either (1) the doctrine of equitable tolling, or (2) equitable estoppel, as codified at Kentucky Revised Statute ("KRS") § 413.190. *See* [R. 43, pp. 12–16]. Relevant to both doctrines, Plaintiff argued that Defendants' concealment of the identities of the assailants prevented her from timely asserting the new claims. *Id.* The defendants filed a response in opposition. [R. 46, pp. 11–13]. Plaintiff replied. [R. 49].

On January 30, 2026, Magistrate Judge Smith filed a Report and Recommendation addressing the Motion to Amend. *See* [R. 57]. Magistrate Judge Smith recommends denying the Motion to Amend, finding that the newly-added claims would be time-barred and as a result, the proposed amendment is futile. *See generally id.* Specifically, the magistrate judge found that, even assuming the defendants concealed certain information, the plaintiff had all of the information necessary to bring these latest claims (including a jail roster of all individuals housed at the detention center) by no later than November 15, 2023. *Id.* at 5–6. As such, the magistrate judge concluded, the statute of limitations would have been tolled only until that date, and the one-year statute of limitations expired several months before Plaintiff sought leave to amend in March 2025. *Id.*

Plaintiff now objects to the Report and Recommendation on the following grounds. First, Plaintiff argues that the magistrate judge erred in finding that the defendant's disclosure of the jail roster put Plaintiff on notice of the failure to protect claims. [R. 60, pp. 4–7]. Next, Plaintiff argues that the magistrate judge should have considered whether the doctrine of equitable tolling (as opposed to the doctrine of equitable estoppel) extended the statute of limitations such that the Second Amended Complaint would have been timely. *Id.* at 7–8. Lastly, Plaintiff argues that the

- 6 -

magistrate judge should have considered whether the Second Amended Complaint relates back to the filing of the original Complaint, thereby rendering the Second Amended Complaint timely filed. *Id.* at 8–10.

Defendants responded to Plaintiff's objections. [R. 64]. They first argue that they did not fraudulently conceal any information; instead, they argue, they acted in compliance with certain statutes and regulations that permit withholding information if its disclosure will threaten the safety or security of certain individuals, like law enforcement personnel or jail inmates. *Id.* at 1–7. Next, they argue that "Plaintiff has sufficient information to assert [her] claims beginning in November 2023," and her failure to protect claims are therefore untimely.[2] *Id.* at 7–9. Lastly, Defendants respond to Plaintiff's relation back arguments, arguing that "the real issue presented to this Court goes to whether the Estate has shown 'good cause' [under Federal Rule of Evidence 16(b)(4)] for failing to comply with the scheduling order." *Id.* at 10.

The Court considers these arguments below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(2) gives a plaintiff fourteen days after service to file objections to a magistrate judge's report and recommendations. This Court must then make a de novo determination of dispositive matters to which specific objections are made. Fed. R. Civ. P. 72(b)(3); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which

---

[2] Specifically, Defendants state that "[t]he statute of limitations was not tolled because of any failure to appreciate the causes of action available." [R. 64, p. 7]. However, the Court understands Defendants argument to be that, even if the statute of limitations was tolled until Plaintiffs had the necessary information to recognize their failure to protect claims, they had that information no later than November 2023, rendering the new claims untimely. *See id.* (quoting the magistrate judge's determination that "even if equitable tolling were applicable here—and the one-year statute of limitations did not begin to run until November 15, 2023—Plaintiff's claims would have been time-barred by the time she sought leave to assert them on March 25, 2025").

preserves the issue for appeal, "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (citation omitted). However, courts need not conduct de novo review of general objections that fail to identify specific factual or legal issues, because it duplicates the magistrate judge's efforts and wastes judicial economy. *Howard v. Sec. of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## III. ANALYSIS

### A. Applicability of Rule 16

Before turning to Plaintiff's objections, the Court addresses Defendants' Rule 16 argument. *See* [R. 64, pp. 10–11]. That rule allows a court's scheduling order to "be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, "[w]hen a party seeks to amend or supplement their pleadings after the scheduling order's deadline to do so, they 'first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper.'" *K. Petroleum, Inc. v. Mills*, 6:22-CC-116-CHB, 2025 WL 2271281, at *2 (E.D. Ky. July 18, 2025) (citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *Hanley v. City of Hamilton*, No. 1:23-CV-342, 2024 WL 4817446, at *3 (S.D. Ohio Nov. 18, 2024)).

In the present case, the Court's scheduling order initially set a deadline of January 31, 2024 for amending pleadings or joining parties. [R. 14, ¶ 3]. When Plaintiff filed her Motion to Amend on March 25, 2025, *see* [R. 43], that deadline was still in effect. However, on September 26, 2025, after Mr. Hoskins's death and Ms. Hoskins's substitution, the parties submitted a joint status report, which included a proposed amended scheduling order. *See* [R. 53, pp. 3–4]. In that proposed amended scheduling order, the parties expressly agreed that "[t]he parties shall have up to and

- 8 -

including January 30, 2026, in which to amend pleadings or join additional parties." *Id.* at 3. After conducting a telephonic status conference, the magistrate judge amended the scheduling order to reflect these new agreed upon deadlines, including the January 30, 2026 deadline for filing amended pleadings. *See* [R. 54]. Thus, at the time the magistrate judge considered the Motion to Amend, the deadline for amending pleadings had not passed, per the parties' agreement. Indeed, the magistrate judge acknowledged this in the Report and Recommendation, stating that, while both parties had addressed Rule 16 in their briefing, "this point is now moot because the deadline to amend pleadings is now January 30, 2026," and as a result, "the Court need not address these arguments." [R. 57, pp. 3–4, n.1].

Defendants did not file any objections to the Report and Recommendation, much less an objection regarding the magistrate judge's decision on Rule 16. Nevertheless, they now argue that Rule 16 applies, but they fail to address (or dispute) the parties' agreement to adjust the relevant deadlines. To the extent this argument is Defendants' attempt to belatedly file an objection to the Report and Recommendation, that objection will be overruled as untimely. *See Crawford v. IC Systems*, No. 17-230-DLB-CJS, 2019 WL 2372887, at *2 (E.D. Ky. Feb. 14, 2019) (overruling the plaintiff's objections as untimely); *see also Allen v. Comm'r of Soc. Sec.*, No. 17-5960, 2018 WL 4042464, at *2 (6th Cir. June 4, 2018) ("By failing to timely object to the magistrate judge's report and recommendation, a party waives further review of his claims by the district court and [the Sixth Circuit] '[a]s long as [he] was properly informed of the consequences of failing to object.'" (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995))). Regardless, the parties' agreement to move the deadline for amending pleadings to January 30, 2026 renders Rule 16 inapplicable, as the magistrate judge has already explained. The Court now turns to Plaintiff's objections.

### B. Plaintiff's First Objection

The Court begins with Plaintiff's first objection, i.e., that the magistrate judge erred in finding that the defendant's disclosure of the jail roster put Plaintiff on notice of the failure to protect claims. [R. 60, pp. 4–7].

In the Motion to Amend, Plaintiff argued that, despite diligent efforts to pursue her rights, the defendants concealed information supporting the failure to protect claims, namely, the identity of the individual prisoners involved in the attack, such that Plaintiff was prevented from timely raising such claims. [R. 43, pp. 11–14]. Instead, Plaintiff first learned of the identities of those individuals on October 11, 2024 through discovery. *Id.* at 13–14. As noted above, Plaintiff had previously sought such information through Kentucky's Open Records Act prior to filing suit, but Plaintiff was repeatedly advised that the records could not be disclosed due to an ongoing investigation by the Bell County Sheriff's Department. *See, e.g.*, [R. 1-1]; [R. 1-3]. However, on November 5, 2024, Plaintiff was notified by the Bell County Sheriff's Department that "it did not perform an investigation pertaining to this case," and it "was never contacted, nor a request made, for an investigation." [R. 43-8]. Because Plaintiff first learned of this alleged deliberate concealment on November 5, 2024, Plaintiff argued in the Motion to Amend that the statute of limitations for the failure-to-protect claims began to run on that date. [R. 43, p. 14].

In support of this argument, Plaintiff relied on (1) the doctrine of equitable tolling, and (2) equitable estoppel under KRS § 413.190(2). In Kentucky,[3] the doctrine of equitable tolling "pauses a limitations period and does not require any wrongdoing, but rather applies when a plaintiff,

---

[3] "When a federal court borrows a state's limitations period in § 1983 action, it generally borrows the accompanying tolling rules as well." *Helm v. Eelss*, 642 F. App'x 558 (6th Cir. 2016) (citation omitted).

- 10 -

'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'" *Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020). On the other hand, "[e]quitable estoppel precludes a defendant, because of his own wrongdoing, from using the statute of limitations as a defense." *Id.* (citation omitted). Kentucky codified these equitable estoppel principles at KRS § 413.190. *See 500 Associates, Inc. v. Vermont American Corp.*, 496 F. App'x 589, 595 (6th Cir. 2012) (referring to KRS § 413.190(2) as "a codification of equitable estoppel principles"); *Munday v. Mayfair Diagnostic Laboratory*, 831 S.W.2d 912, 914 (Ky. 1992) ("We have held that [KRS 413.190] is simply a recognition in law of an equitable estoppel or estoppel *in pais* to prevent fraudulent or inequitable application of a statute of limitation."). That statute provides, in pertinent part,

> When a cause of action . . . accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

KRS § 413.190(2). A party seeking to invoke this statute "must show 'some act or conduct which in point of fact misleads or deceives [the party] and obstructs or prevents him from instituting his suit while he may do so.'" *Helm v. Ratterman*, 778 F. App'x 359, 369 (6th Cir. 2019) (quoting *Helm v. Eells*, 642 F. App'x 558, 563 (6th Cir. 2016)). The limitations period then begins to run "when the defendant's concealment is revealed or when the plaintiff 'should have discovered his cause of action by reasonable diligence.'" *Id.* (quoting *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 575 (Ky. 2009).

To the extent she relied on this statutory provision, Plaintiff argued that she discovered Defendants' alleged concealment of certain records, including those identifying the assailants, on November 5, 2024 when she received the letter from the Bell County Sheriff's Department

advising that no investigation was ever undertaken, and as a result, the one-year statute began to run on that date.[4] [R. 43, p. 14]; *see also* [R. 43-8]. As a result, Plaintiff argued, the Second Amended Complaint, which Plaintiff moved to file on March 25, 2025, *see* [R. 43], was timely.

Magistrate Judge Smith disagreed. In reaching this conclusion, the magistrate judge repeatedly references the doctrine of equitable *tolling*; however, she relied on case law applying KRS § 413.190(2), which as noted above, codifies the doctrine of equitable *estoppel*.[5] *See generally* [R. 57, p. 5]; *Williams*, 594 S.W.3d at 193 (noting that "equitable estoppel and equitable tolling are distinguishable"); *Dunlap v. Louisville Metro Government*, No. 3:22-cv-412-BJB, 2025 WL 2779158, at *4 (W.D. Ky. Sept. 29, 2025) (discussing equitable tolling and, separately, "the related doctrine of equitable estoppel"). As noted above, to succeed on her KRS § 413.190(2) equitable estoppel argument, Plaintiff needed to show "'some act or conduct which in point of fact misleads or deceives [the party] and obstructs or prevents him from instituting his suit while he may do so.'" *Helm*, 778 F. App'x at 369 (quoting *Helm*, 642 F. App'x at 563). On this issue, the magistrate judge found that, even assuming the defendants had concealed certain information, Plaintiff had all of the information she needed to assert her failure to protect claims by November 15, 2023, because by that time, she (1) knew that the detention center was required under Kentucky law to classify inmates; (2) possessed a copy of the detention center's Policy and Procedure Manual; (3) received a copy of a roster of all inmates housed at the detention center at the time of

_____

[4] As explained below, Plaintiff argues in her objections that the statute of limitations began on October 11, 2024, when she first learned of the identifies of the assailants. [R. 60, p. 7].

[5] To be clear, the magistrate judge does not cite to this statute. However, given her reliance on case law interpreting this statute, the Court understands that she relied on the doctrine of equitable estoppel, as codified at KRS § 413.190(2). To add to this confusion, many cases discussing KRS § 413.190(2) reference "equitable tolling." *See, e.g.*, *Helm*, 642 F. App'x at 563.

the attack; and (4) received a copy of the arrest citation for an individual, Matthew Gibson, who was arrested for his involvement in the attack. [R. 57, pp. 5–6]. Thus, Magistrate Judge Smith concluded, even if KRS § 413.190(2) applied, the one-year statute of limitations began to run on November 15, 2023, when Plaintiff received the jail headcount roster for the relevant time frame, and it had expired long before Plaintiff sought to file her Second Amended Complaint on March 25, 2025. *Id.* at 6; *see also  Helm*, 778 F. App'x at 369 (explaining that, where equitable estoppel applies, the limitations period then begins to run "when the defendant's concealment is revealed or when the plaintiff 'should have discovered his cause of action by reasonable diligence'" (quoting *Emberton*, 299 S.W.3d at 575)). The defendants appear to adopt this same reasoning in their response to Plaintiff's objections. *See* [R. 64, pp. 7–9].

The Court disagrees that Plaintiff had all of the information needed to raise her failure to protect claims and theories by November 15, 2023. It is undisputed that, at that time, Plaintiff had not been provided and did not know the names of each assailant, even though Plaintiff's counsel had repeatedly requested those names from defense counsel, defense counsel had the information in hand, and Plaintiff's counsel diligently attempted to negotiate a protective order requested by defense counsel, to no avail.[6] Without those names, any information gleaned about the detention center's failure to properly classify and house inmates would have been incomplete with regards to fully assessing whether Mr. Hoskins had a potential claim or claims for failure to protect based on the jail's failure to properly classify inmates. To be sure, Plaintiff had information by November 15, 2023 that could have, with more investigation, revealed the general classification issues at the

---

[6] Plaintiff knew the identity of one assailant, Matthew Gibson, but it is not alleged that this assailant should have been classified as a violent prisoner or had any history of violence, such that he was improperly classified and housed with non-violent prisoners. Thus, this information could not have supported Plaintiff's failure to protect claims.

detention center. But Plaintiff had no way to know that those classification issues may have contributed to Mr. Hoskins's injuries until Plaintiff had additional information—namely, the names of the assailants. Only upon learning of the identifies of the assailants, which in turn allowed counsel to investigate their prior offenses and classifications, did Plaintiff have grounds to allege that the classification issues at the detention center may have contributed to his assault. For example, if all of Mr. Hoskins's assailants had been classified as non-violent, and would therefore have been properly housed with Mr. Hoskins, it would be difficult to link the detention center's general classification failures with his assault and injuries.

The Court will therefore sustain Plaintiff's first objection, i.e., that the magistrate judge erred in finding that that the defendant's disclosure of the jail roster—which named *all* individuals housed at the detention center and did *not* identify which of those individuals were involved in the assault—put Plaintiff on notice of the failure to protect claims.

### C.  Plaintiff's Second Objection

In her second objection, Plaintiff argues that the magistrate judge should have considered whether equitable tolling extended the statute of limitations such that the Second Amended Complaint would have been timely. [R. 60, pp. 7–8]. As noted above, equitable tolling and equitable estoppel are distinct doctrines. *See Williams*, 594 S.W.3d at 193. Unlike equitable estoppel, which requires some wrongdoing on the part of the defendant, "[e]quitable tolling pauses a limitations period and does not require any wrongdoing, but rather applies when a plaintiff, 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'" *Id.* (quoting *Chung v. U.S. Dept. of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003)). In other words, "[e]quitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing

- 14 -

a timely action." *Id.* (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)) (internal quotation marks omitted). Thus, to succeed on an equitable tolling argument, Plaintiff bears the burden of showing that (1) she "has been pursuing [her] rights diligently, and (2) that some extraordinary circumstances stood in [her] way." *Id.* at 194 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

As to the first of these elements, the Court finds that Plaintiff has diligently pursued her rights. Mr. Hoskins was assaulted on September 1, 2022. [R. 1, ¶¶ 19–22]. As early as September 7, 2022, only days after the assault, Mr. Hoskins, through counsel, served his first Open Records Act requests on Bell County, specifically seeking information and documentation relating to the assault. [R. 1-1]. When Defendants failed to respond to that Open Records Act request, Mr. Hoskins sent another request on September 23, 2022. [R. 1-2]. On September 29, 2022, Bell County responded, explaining that certain records were exempt because the Bell County Sheriff's Department was actively investigating the matter. [R. 1-3]. Nevertheless, only a few days later, Mr. Hoskins's counsel requested additional records, only to be told again that such records could not be released until the investigation concluded. [R.1-4, p. 1]; [R. 1, ¶ 69]. On August 23, 2023, Mr. Hoskins inquired as to whether the detention center would supplement its responses, "as the investigation had to now be concluded." [R. 1, ¶ 70]. The county never supplemented its responses prior to litigation. *Id.* ¶ 71. Mr. Hoskins then filed this action on September 1, 2023. [R. 1]. Shortly thereafter, on November 15, 2023, Defendants finally supplemented their response to Mr. Hoskins's Open Records Act request. [R. 46-8]; [R. 46-9]. In this response, Defendants revealed the existence of signed inmate statements that identified the assailants. [R. 46-8, p. 3]. When the defendants proposed a protective order that would allow for the disclosure of such information, Plaintiff's counsel promptly responded, only to be met with silence, despite multiple follow up

- 15 -

attempts. [R. 49, pp. 3–4], [R. 49-5]. From the record before the Court, it is clear that Plaintiff actively and diligently pursued her rights in this matter.

Nevertheless, in their response brief, the defendants suggest that Plaintiff did not act diligently because she did not request that the state Attorney General review Bell County's responses to her Open Records Act requests, as permitted by the statute. [R. 46, pp. 5–6]; *see also* [R. 64, p. 6]. Defendants thus appear to argue that the plaintiff should have suspected that their responses contained misrepresentations or falsities, or otherwise violated the state Open Records Act, rather than accept those responses at face value. Defendants fail to cite any case law or authority in support of such an argument, and the Court finds it to be wholly unconvincing. For similar reasons, the Court also finds no merit in Defendants' assertion that Plaintiff's "counsel could have sought disclosure through a motion to compel yet no motion was filed." [R. 64, p. 7].

The defendants also suggest that Plaintiff failed to act diligently because, while Bell County proposed a protective order that would have permitted the disclosure of the inmate statements identifying the assailants, "the order was not returned or tendered to the Court for entry." [R. 46, p. 6]. The Court finds this argument to be disingenuous, at best. As noted above, Plaintiff's attorney immediately responded to Bell County's counsel with suggested edits to the proposed protective order but received no response. [R. 49, pp. 3–4]. Plaintiff followed up multiple times over the next few months about the proposed changes to the protective order but did not receive any response from Bell County's counsel. *Id.*; *see also* [R. 49-5]. At no point do Defendants dispute this. *See, e.g.*, [R. 64, pp. 5–6], Thus, it appears that no protective order was issued as a result of Defendants' own conduct.

Lastly, the defendants argue throughout their response brief that Plaintiff had all the information she needed to investigate and discover the classification-related claims, long before

she knew of the assailants' identifies. *See, e.g.*, [R. 46, pp. 9–10]; *see also* [R. 64, pp. 7–9]. As already explained, the Court finds no merit to this argument. *See supra* Section III(B). Accordingly, for all of the reasons just stated, the Court finds that Plaintiff diligently pursued her rights and has therefore satisfied the first element of equitable tolling.

The Court therefore turns to the second element, that extraordinary circumstances prevented Plaintiff from timely raising her new claims. Importantly, "[t]he circumstances must have been 'both extraordinary *and* beyond [the litigant's] control.'" *Salyer v. Colvin*, No. 16-60-ART, 2016 WL 6990765, at *2 (E.D. Ky. Nov. 28, 2016) (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016)). In other circumstances, extraordinary circumstances did not exist where the defendant failed to identify another entity responsible for the plaintiff's injuries, because there were "other avenues will within the plaintiff's control that [the plaintiff] could have utilized to determine" the responsible entity. *Moran v. Wal-Mart, Inc.*, No. 5: 21-260-DCR, 2022 WL 2307383, at *3 (E.D. Ky. June 27, 2022).

In the present case, Defendants do not directly address the "extraordinary circumstances" element of this test, but they insist that "Plaintiff's counsel was provided with the means for acquiring additional knowledge about the details of the assault as well as the persons who perpetrated the crime." [R. 46, p. 13]; *see also* [R. 64, pp. 7–9]. But from the best the Court can tell, Defendants rely on their earlier assertion that Plaintiff had enough information to pursue the failure to protect claims, even without the identities of the assailants, and Plaintiff could have learned more about the assailants had they pursued a protective order. *See generally* [R. 46]. The Court has already disposed of these arguments above, and for the same reasons, it finds those arguments equally unpersuasive now.

- 17 -

Instead, on the record before it, the Court finds that extraordinary circumstances beyond Plaintiff's control prevented the plaintiff from learning the identities of the assailants in this case, thereby preventing her from investigating and discovering her failure to protect claim. Despite multiple attempts by Plaintiff's counsel to obtain that information through the state's Open Records Act, Plaintiff was repeatedly told that such information could not be provided. Specifically, Plaintiff was told that the Bell County Sheriff's Department was actively investigating the incident. *See* [R. 1-3]; [R. 1-4]. On November 5, 2025, Plaintiff was notified by the Bell County Sheriff's Department that "it did not perform an investigation pertaining to this case," and it "was never contacted, nor a request made, for an investigation." [R. 43-8].

Nevertheless, in their response brief, Defendants assert that an investigation *did* occur, because one assailant, Matthew Gibson, was arrested and charged with assault in the second degree, and as a result, Defendants' refusal to provide the requested records, including the inmate statements and a surveillance video, "was based upon an exemption set out in KRS § 61.878(h)." [R. 46, pp. 4–5]. That provision exempts from disclosure

> [r]ecords of law enforcement agencies . . . that were compiled in the process of detecting and investigating statutory or regulatory violations if the disclosure of the information could pose an articulable risk of harm to the agency or its investigation by revealing the identity of informants or witnesses not otherwise known or by premature release of information to be used in a prospective law enforcement action or administrative adjudication.

KRS 61.878(h).

In their response to Plaintiff's objections, Defendants again cite to this and other provisions that permit withholding of certain information if its disclosure will threaten the safety or security of certain individuals, like law enforcement personnel or jail inmates. [R. 64, pp. 1–7]. Thus, Defendants argue, they were not fraudulently concealing any information and were instead

- 18 -

complying with these provisions. The Court notes, however, that, in the responses to the Open Records Act requests, defense counsel repeatedly referenced an ongoing investigation with the Bell County Sheriff's Department and discussions with the Bell County Sheriff's Department about that investigation, *see* [R. 1-3]; [R. 1-4], which the Bell County Sheriff's Department flatly denied. *See* [R. 43-8].

Regardless, the Court acknowledges that Defendants may have believed an investigation was ongoing at the Bell County Sheriff's Department, such that this exemption applied. However, for purposes of the present motion, the Court need not determine whether Defendants willfully misrepresented the existence of such an investigation or otherwise improperly withheld the identities of the assailants. The doctrine of equitable tolling "does not require any wrongdoing." *Williams*, 594 S.W.3d at 193. Instead, the Court need only find that, despite Plaintiff's diligence, extraordinary circumstances prevented Plaintiff from timely raising her failure to protect claims. Here, whether based on a valid exemption or not, Defendants withheld information vital to Plaintiff's claims, namely, the identity of the assailants. The Court is not aware of any other outlet through which Plaintiff could have learned that information. Indeed, it was not until November 15, 2023 that Defendants admitted that they knew the identities of the other assailants and expressed a willingness to provide the records "upon the entry of a protective order." [R. 46-8, p. 3]. However, no such order was entered due to *Defendants'* repeated failures to respond to inquiries about finalizing the protective order. *See* [R. 49-5]. Again, Defendants do not dispute this. As a result of the defendants' failure to engage with Plaintiff to finalize the protective order, Plaintiff did not learn of the identities of the assailants until October 11, 2024. *See* [R. 43, p. 5]; [R. 43-3 (Inmate Statements)]. Under these specific facts, the Court finds that extraordinary circumstances prevented Plaintiff from timely raising her failure to protect claims, and she has therefore satisfied

the second and final element of equitable tolling.

With both elements of equitable tolling satisfied, the Court finds that the one-year statute of limitations was tolled until, at the earliest, October 11, 2024, the date Plaintiff first learned the identities of her assailants. This information allowed her to investigate and discover the failure to protect claims, as already explained. *See supra* Section III(B). At the latest, then, the statute of limitations ran on October 11, 2025. Because Plaintiff sought leave to file her Second Amended Complaint on March 25, 2025, those claims were timely asserted. The Court will therefore sustain Plaintiff's second objection and will grant the Motion to Amend.[7]

### D.  Plaintiff's Third Objection

Because the Court has ruled that Plaintiff sought leave to file her Second Amended Complaint prior to the expiration of the relevant statute of limitations, it need not consider her final objection, i.e., that Magistrate Judge Smith erred in failing to consider whether the Second Amended Complaint relates back to the filing of the original Complaint under Rule 15(c)(1)(B). *See* [R. 60, pp. 8–10]. Nevertheless, the Court briefly considers this argument.

Before doing so, however, the Court notes (and Plaintiff admits) that neither party raised this "relation back" issue in their briefing on the Motion to Amend. *See, e.g.*, [R. 60, p. 8].  In *Murr v. United States*, 200 F.3d 895 (6th Cir. 2000), the Sixth Circuit reasoned that "while the Magistrate Judge Act . . . permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Id.* at 900 n. 1. Nevertheless, whether an

---

[7] Beyond timeliness, the defendants did not argue any other basis for denying the motion to amend. *See* [R. 46]; [R. 64].

amendment relates back to an earlier pleading is clearly outlined in Rule 15, the rule governing amended and supplemental pleadings, which was the primary rule discussed in the parties' briefing and the Report and Recommendation. *See Hurd v. Adams*, No. 7:20-CV-00047-EBA, 2023 WL 4306667, at *6 (E.D. Ky. June 30, 2023) ("Here, only Adams'[s] Response references the applicability of Rule 15, but the Court will address the issue of the relation back doctrine out of an abundance of caution."). Moreover, Defendants were given an opportunity to respond to Plaintiff's objections and did so. [R. 64]. They do not argue that the Court should refrain from considering the relation back argument. *See id.* at 10. Indeed, despite the opportunity to fully address Plaintiff's relation back arguments, Defendants fail to provide any substantive response, other than arguing under Rule 16, *id.* at 10,[8] which is irrelevant given the amended scheduling order. *See supra* Section III(A). As such, the Court finds it appropriate to now consider the issue.

Rule 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading" in certain circumstances. Fed. R. Civ. P. 15(c). Relevant here, an amendment "relates back" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). However, "[a]lthough the focus of the inquiry into whether an amendment of a claim relates back is whether it arises from the same conduct, transaction, or occurrence, [courts] look

---

[8] At most, Defendants briefly address two cases cited in Plaintiffs' objections: *Bradford v. Bracken County*, 767 F. Supp. 2d 740 (E.D. Ky. 2011) and *Hurd v. Adams*, NO. 7:20-CV-00047-EBA, 2023 WL 4306667 (E.D. Ky. June 30, 2023). *See* [R. 60, p. 8]; [R. 64, p. 10]. However, Plaintiff cites those cases only for the proposition that the Magistrate Judge should have considered relation back, even though neither party argued it. *See* [R. 60, p. 8]. Plaintiff did not rely on these cases to support her substantive relation back arguments. Nor would such citation have been particularly persuasive, as the court in both cases considered the applicability of Rule 15(c)(1)(C), which applies to amendments changing the party or the naming of the party against home a claim is asserted. Moreover, in the portion of *Hurd v. Adams* discussed (briefly) by Defendants, *see* [R. 64, p. 10], the Court was not considering the relation back doctrine and was instead considering whether the statute of limitations should be tolled under KRS § 413.190(2). *See Hurd*, 2023 WL 4306667, at *4.

to other factors and have recognized that '[n]otice and substantial prejudice to the opposing party are critical.'" *Arriola v. Commonwealth of Kentucky*, No. 19-5036, 2019 WL 7567195, at *2 (6th Cir. Aug. 13, 2019) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

The Sixth Circuit has also provided the following guidance on applying this rule:

> When applying this standard to the facts of a given case, the Court gives content to those terms not by generic or ideal notions of what constitutes a "conduct, transaction, or occurrence," but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."). The Rule also must be interpreted in light of the "fundamental tenor of the Rules," which "is one of liberality rather than technicality." [*Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000)].

*United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 516 (6th Cir. 2007). The Sixth Circuit has also explained that "[t]his standard is usually met 'if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong.'" *Durand v. Hanover Ins. Group, Inc.*, 806 F.3d 367, 375 (6th Cir. 2015) (quoting *Miller*, 231 F.3d at 250).

Essentially, the question before the Court is whether the allegations in the original Complaint gave Defendants enough notice of the nature and scope of the plaintiff's claims such that it could not have been surprised by the additional allegations and theories added in the Second Amended Complaint. *See Bledsoe*, 501 F.3d at 516. In other cases, the defendants were given enough notice where both complaints alleged claims arising out of the same incident. *See Hayes v. Gordon Food Service, Inc.*, 783 F. Supp. 3d 1016, 1031 (W.D. Ky. Jan. 27, 2025) (finding that Rule 15(c)(1)(B) was satisfied where both complaints alleged claims arising out of the same

- 22 -

shooting incident); *Kelter v. WASP, Inc.*, 5 F. Supp. 3d 856, 863 (W.D. Ky. 2014) (finding the first requirement satisfied when both complaints alleged claims arising out of the same accident). Similarly, in this case, the claims asserted in the original Complaint and the Second Amended Complaint all arise out of the same incident, that is, Mr. Hoskins's assault at the Bell County Detention Center. Defendants do not dispute this. *See generally* [R. 64, pp. 10–11]. Nor do Defendants dispute that the original Complaint and the proposed Second Amended Complaint involve the same defendants and the same plaintiff (that is, Mr. Hoskins), or that the allegations in both arise out of the assault of Mr. Hoskins and allege the same injuries. *See Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) ("[W]here the parties are the same, we think the better rule is that an amendment which adds another claim arising out of the same transaction or occurrence does relate back to the date of the original complaint." (citations omitted)).

In short, the Second Amended Complaint "merely asserts a new legal theory arising out of the same occurrence as asserted in the original complaint." *Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 934 (6th Cir. 2009) ("While the amended complaint is substantially more sophisticated than the original complaint and asserts a new motivation for the reduction pursuant to a different constitutional claim, it merely asserts a new legal theory arising out of the same occurrence as asserted in the original complaint. It thus satisfies our test for relation back under the liberal standard required by Rule 15(c)"); *see also Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000) ("[A] court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence." (citations omitted)).

Moreover, it is clear from the record that Defendants were on notice of potential classification issues as early as October 21, 2024, several months before Plaintiff moved to amend her complaint. During Mr. Hoskins's October 21, 2024 deposition, defense counsel asked whether

- 23 -

Mr. Hoskins intended to testify at trial that he should not have been placed in his cell because it was too crowded. [R. 43-1, p. 62: 10–12 (Hoskins Depo.)].[9] As the questioning continued, defense counsel asked whether Mr. Hoskins had "some problem with how they classified you" and if he knew "whether they stuck [him] in there with people that had violent tendencies."[10] *Id.* at 63:10–13. At the time defense counsel asked these questions, the identities of the assailants had just been disclosed, but the parties were operating under the original Complaint. Thus, based on the allegations in that original Complaint, defense counsel was at least alerted to the possibility of a classification issue, such that he deemed it necessary to ask these questions. The Court therefore finds that Defendants had "been placed on notice that [they] could be called to answer for the allegations in the amended pleading." *Bledsoe*, 501 F.3d at 516. And again, Defendants do not argue that they lacked such notice. *See generally* [R. 64, pp. 10–11].

Lastly, the Court considers whether Defendants will suffer "substantial prejudice." *Arriola*, 2019 WL 7567195, at *2. Defendants—in the context of their Rule 16 argument—insist that they will suffer prejudice because "Mr. Ferguson's term as jailer ended on December 21, 2022," and "nearly all of the other deputy jailers left their employment around that time." [R. 64, p. 11]. Defendants fail to explain, however, the relevance of these facts. According to Defendants, these employees left the jail long before this lawsuit was filed, yet Defendants were able to engage in

---

[9] The Court refers to the page numbers listed on each individual page of the deposition transcript (with four individual deposition pages being shown on each page of the electronic filing).

[10] Interestingly, Defendants cite to this portion of Mr. Hoskins's deposition as proof that Mr. Hoskins "was aware of the possible problems with classification." [R. 64, p. 8]. Defendants make this point as part of their argument that Plaintiff had all of the information necessary to assert he failure to protect claims by November 15, 2023. *See id.* at 7–9. However, Mr. Hoskins's deposition occurred almost a year later, on October 21, 2024. *See* [R. 43-1 (Hoskins Depo.)].

discovery on the original claims against these individuals, and the Court has no reason to believe that they could not gather additional information and discovery from these defendants. And while Defendants also argue that the proposed amendment will require "reopening discovery in all phases," leading to additional expenses for Defendants, the Court notes that, *by agreement of the parties*, fact discovery did not conclude until February 27, 2026, and the expert discovery does not close until June 1, 2026. *See* [R. 53]; [R. 55].[11] The Court therefore finds any prejudice from reopening discovery or extending current deadlines to be minimal.

Accordingly, even if the applicable statute of limitations had passed prior to the filing of Plaintiff's Motion to Amend, the Court finds that the Second Amended Complaint "relates back" to the original Complaint, such that it is considered timely. In reaching this conclusion, the Court is mindful that "[t]he thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleadings," *Arriola*, 2019 WL 7567195, at *3 (quoting *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 15(a)(2) (directing courts to "freely given when justice so requires").

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff sought to add her failure to protect claims within the applicable limitations period, or in the alternative, the Second Amended Complaint "relates back" to the original Complaint, such that it is timely. The Court will therefore sustain Plaintiff's objections and grant the Motion to Amend.

Accordingly, the Court being sufficiently advised,

---

[11] The parties proposed amending the fact discovery deadline to January 27, 2026. [R. 53]. However, after a telephonic status conference with the magistrate judge, the fact discovery deadline was set for February 27, 2026. [R. 55].

**IT IS HEREBY ORDERED** as follows:

1. Plaintiff's objections to the Report and Recommendation, [**R. 60**], are **SUSTAINED**.

2. Plaintiff's Motion to Amend, [**R. 43**], is **GRANTED**.

3. The Clerk is directed to docket the Plaintiffs' tendered Second Amended Complaint

   [**R. 43-9**] as the Second Amended Complaint in this action.

   This the 9th day of March, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY